# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Scott M.,

Plaintiff,

v.

Nancy A. Berryhill, Acting Commissioner
of Social Security

Defendant.

Case No. 17-cv-5086 (ECW)

**ORDER**

This matter is before the Court on Plaintiff Scott M.'s ("Plaintiff") Motion for
Summary Judgment (Dkt. No. 11) ("Motion") and Defendant Acting Commissioner of
Social Security Nancy A. Berryhill's ("Defendant") Cross Motion for Summary
Judgment (Dkt. No. 15) ("Cross Motion"). Plaintiff filed this case seeking judicial
review of a final decision by Defendant denying his application for widower insurance
benefits. He specifically challenges the Administrative Law Judge's ("ALJ") evaluation
of Plaintiff's treating physician assistant's opinion and the assessment of his residual
functional capacity ("RFC"). For the reasons stated below, Plaintiff's Motion is denied,
and Defendant's Cross-Motion is granted

# I.     BACKGROUND

Plaintiff filed an application for Widower's Insurance Benefits on May 19, 2016, alleging disability beginning June 1, 1995.[1]  (R. 168-69.)[2]  His application was denied initially (R. 97) and on reconsideration (R. 104).  Plaintiff requested a hearing before an ALJ, which was held on June 19, 2017 before ALJ Brenda Rosten.  (R. 15.)  The ALJ issued an unfavorable decision on July 6, 2017.  (R. 28.)  Following the five-step sequential evaluation process under 20 C.F.R. § 404.1520(a), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since June 1, 1995.  (R. 18.)

At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative joint disease, right hip; status post left hip replacement; remote history of right tibia/fibula (tib/fib) fracture and surgical lengthening of the common digital flex or tendon; obesity (with body mass index (BMI) of 42.3 about the filing date and 42.73 recently); status partial right knee partial medial meniscectomy and synovectomy; fibromyalgia; and depression.  (R. 18.)  The ALJ determined that Plaintiff's other physical impairments were not severe, including obstructive sleep apnea, diabetes, and hypertension.  (R. 18.)  The ALJ noted that each of these impairments are

---

[1]     Defendant states "Plaintiff later amended his onset date to April 29, 2016."  (Dkt. No. 16 at 2.)  The ALJ applied a disability onset date of June 1, 1995 in her decision.  (*See* R. 16, 18, 26, 28.)  April 29, 2016 is the date Plaintiff's wage earner wife died, thus Plaintiff must establish that his disability began on or before April 30, 2023.  (R. 16 (citing 20 C.F.R. § 404.335).)

[2]     The Social Security Administrative Record ("R.") is available at Dkt. No. 10.

not severe as they have not been shown to more than minimally interfere with Plaintiff's ability to engage in basic work activities.  (R. 18.)

At the third step, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 19.)  The ALJ considered the "paragraph B" criteria as to Plaintiff's mental impairment, namely depression, but determined that Plaintiff "has no greater than mild limitation in understanding, remembering, or applying information, or in adapting or managing himself."  (R. 19.)  The ALJ determined that Plaintiff had no greater than moderate limitation in interacting with others and in concentrating, persisting, and maintaining pace.  (R. 19.)  Because Plaintiff's mental impairment does not cause at least two "marked" limitations or one "extreme" limitation, the ALJ opined that the "paragraph B" criteria were not satisfied.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.  The ALJ also determined that the "paragraph C" criteria were not met.  *Id.*  ("To satisfy the paragraph C criteria, your mental disorder must be 'serious and persistent'; that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence that satisfies the criteria in both C1 and C2 (see 12.00G).").

At step four, after reviewing the entire record, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently.  The claimant can sit for about 6 hours in an 8-hour workday, but would need an opportunity to stand up and/or change position at his

workstation for approximately 2-3 minutes after sitting for an hour. After using that opportunity, the claimant could return again to a seated position and continue in that fashion for the remainder of the 8-hour workday. The claimant can stand and/or walk combined for about 4 hours in an 8-hour workday, but would need to avoid uneven terrain. The claimant can occasionally use foot controls with his right lower extremity. The claimant can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs using a handrail. The claimant can occasionally balance, stoop, and crouch, and rarely (defined as 1 to 5 percent of a workday) kneel and crawl. The claimant should have no exposure to work around hazards, such as unprotected heights and fast and dangerous moving machinery. Mentally, the claimant is limited to simple tasks. The claimant can maintain concentration, persistence and pace for 2-hour work segments. The claimant is limited [to] brief superficial contact with co-workers and the general public.

(R. 19-20.) After determining Plaintiff's RFC, since Plaintiff has no past relevant work, the ALJ moved on to step five.

At step five, the ALJ asked a vocational expert ("VE") whether jobs exist in the national economy for a hypothetical individual with Plaintiff's RFC, age, education, and work experience. (R. 61-63.) The VE testified that there were such jobs in the national economy, including an information clerk, a document scanner, and a document shredder. (R. 27, 63.) Based on the VE's testimony, the ALJ determined that Plaintiff is not disabled. (R. 27-28.)

Plaintiff requested review of the decision. (R. 1.) The Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. (R. 1.) Plaintiff then commenced this action for judicial review. The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties. The Court will recount the facts of record only to

the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II.    LEGAL STANDARD

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or if the ALJ's decision resulted from an error of law. *Nash v. Comm'r, Soc. Sec. Administration*, 907 F.3d 1086, 1089 (8th Cir. 2018) (citing 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018)). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." *Id.* (quoting *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)). The Court "considers evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.*

"A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The Eighth Circuit has held that "a 'claimant's residual functional capacity is a medical question.'" *Id.* (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). "'[S]ome medical evidence' must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" *Id.* (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam)).

An ALJ should consider several factors, in addition to the objective medical evidence, in assessing a claimant's subjective symptoms, including daily activities; work history; intensity, duration, and frequency of symptoms; any side effects and efficacy of medications; triggering and aggravating factors; and functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *5-7 (S.S.A. Mar. 16, 2016) (listing these factors as relevant in evaluating the intensity, persistence, and limiting effects of a person's symptoms).  But the ALJ need not explicitly discuss each factor. *See Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005).

## III.    DISCUSSION

Plaintiff argues that the ALJ failed to give sufficient weight to the opinion of Plaintiff's rheumatology provider, Jacquelyn Steckler, PA-C ("PA Steckler"), who completed a Medical Source Statement ("MSS") on April 18, 2017.  (Dkt. No. 12 at 5.). PA Steckler is a physician assistant ("PA").  (*Id.* at 10 n.4.)

The MSS states that PA Steckler has seen Plaintiff "usually a couple times a year, that varied" from August 4, 2004 to December 13, 2016, the most recent visit.  (R. 548.) The MSS reports that Plaintiff was diagnosed with fibromyalgia, hip pain, leg pain, ankle and foot pain, osteoarthritis of left hip and replacement.  (R. 548.)  The MSS reports Plaintiff's treatment as physical therapy, consults to other specialties as indicated, medications as indicated, and joint injections.  (R. 548.)  The reported symptoms include neck pain, upper back pain, muscle and joint pain, right knee pain, upper calf pain, toe pain on three toes of his right foot, pain/stiffness associated with fibromyalgia, and a

history of pain in his upper back and hip areas. (R. 548.) The MSS characterizes the pain as between four to eight out of a ten-point scale, where weather or activity make the pain worse, and as daily to constant pain. (R. 548.) PA Steckler noted the following objective signs of pain: reduced range of motion in the right second toe, right ankle, right and left wrists; tenderness in the neck and upper and lower back; crepitus in the neck; trigger points; swelling in the right ankle at the end of the day; and abnormal gait. (R. 549.) PA Steckler noted that that there were no signs of joint warmth, joint deformity, joint instability, reduced grip strength, sensory changes, muscle atrophy, or positive straight leg raising test. (R. 549.)

The MSS includes the notation "vet reports" or "per veteran" (referring to Plaintiff, a veteran) for many of the limitations or reported symptoms. In the MSS, Plaintiff reported balance issues. (R. 549.) Plaintiff reported anxiety. (R. 549.) Plaintiff reported that his symptoms are severe enough to interfere with attention and concentration between frequently and constantly. (R. 549.) Plaintiff reported a "marked limitation" in his ability to deal with stress and that "he often gets to[o] overwhelmed to deal with anything." (R. 550.) Plaintiff reported that he can walk only one and a half blocks without rest, can continuously sit for only 30 minutes, can continuously stand for only 15 minutes, and can sit for less than 2 hours in an 8-hour day, and stand/walk for less than 2 hours in an 8-hour day. (R. 550.) Plaintiff reported that "he needs to change position frequently due to pain and stiffness." (R. 550.). Plaintiff reported that he must get up to walk every 20-30 minutes for 3 minutes each time. (R. 551.) Plaintiff reported that he will need take unscheduled 10-minute breaks every 30 minutes before returning to

work.  (R. 551.)  He reported that he will need to lie down at unpredictable intervals once per day for 30 minutes.  (R. 551.)  Plaintiff reported that he is subject to frequent falls due to balance issues.  (R. 552.)  Plaintiff reported that he wears an ankle Arizona brace when engaging in occasional standing/walking.  (R. 552.)  Plaintiff reported that he can never lift and carry 50 pounds, but can occasionally lift and carry up to 20 pounds.  (R. 552.)  Plaintiff reported that he can repetitively use his hands 25% of the time, repetitively use his fingers 25% of the time, and repetitively use his arms 10% of the time during an 8-hour working day.  (R. 552.)  Plaintiff reported that he can bend or twist less than 10% of the time during an 8-hour working day.  (R. 552.)  He further reported that he would likely be absent from work more than three times a month.  (R. 553.)  Plaintiff also reported that he was becoming more reclusive, that his vision can be blurry with elevated blood sugars, his balance issues arise with fast repetitive movements, and that he gets confused easily.  (R. 553.)  At the end of the MSS, above her signature, PA Steckler noted: "The above form was filled out to the best of my ability.  Veteran present during the process.  Unable to perform functional capability testing."  (R. 553.)

Plaintiff contends that this MSS should be considered a treating source opinion and that the ALJ therefore failed to give it proper weight in determining the RFC.  (Dkt. No. 12 at 10-12.)  As discussed below, the Court disagrees because under the applicable regulations, PA Steckler is not a "treating source" and not necessarily entitled to the weight assigned to a medical opinion.  In any event, even if PA Steckler were entitled to the deference due a "treating source," the MSS is based primarily on Plaintiff's self-reported symptoms and thus should not receive significant weight.

8

## A.  PA Steckler Is Not a Treating Source

Plaintiff relies on 20 C.F.R. § 404.1527 and cases applying that regulation to support his argument that the ALJ did not give PA Steckler's opinions appropriate weight.  (*See* Dkt. No. 12 at 10-12.)  In particular, Plaintiff repeatedly describes PA Steckler as a "treating source."  (*Id.*)  However, for social security benefits applications filed prior to March 27, 2017, which was the case here, under the applicable version of § 404.1527, PA Steckler is not a "treating source" because, as a PA, she is not an "acceptable medical source."[3]

The Social Security Regulations state that "[t]reating source means your own physician, psychologist, **or other acceptable medical source** who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."  20 C.F.R. § 404.1502 (emphasis added).  Thus the definition of "treating source" itself recognizes that medical sources that are not "acceptable" cannot be a "treating source."  The Eighth Circuit has similarly recognized that other medical sources are not treating sources, unless associated with an acceptable

---

[3]     Plaintiff acknowledges that PA Steckler is not an "acceptable medical source" in a footnote, but argues that "the ALJ did not cite PA Steckler's status as a nonacceptable source as a basis for rejecting her opinion."  (Dkt. No. 12 at 10-11 n.4.)  While the ALJ did not expressly state that PA Steckler is not a "treating source" because she is not an "acceptable medical source," the fact that PA Steckler is not a "treating source" under the regulations supports the ALJ's decision.  *See Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011) (quoting *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992)) ("[T]he ALJ's 'arguable deficiency in opinion-writing technique,' had no bearing on the outcome of [Plaintiff's] case and does not require remand.").  Even if the ALJ had erroneously considered PA Steckler a "treating source," any such error does not alter the law this Court must apply during its review of the ALJ's decision and does not require the Court to treat PA Steckler as a treating source for purposes of that review.

medical source. *See Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006) ("Mr.

Cline was not a treating source as defined in the regulations, nor was he associated with a

physician, psychologist, or other acceptable medical source that could potentially give

him treating source status.") (citing *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir.

2003) (giving treating source status to the group of medical professionals, including

therapists and nurse practitioners who worked with claimant's psychologist, where the

treatment center used a team approach); *Benton ex rel. Benton v. Barnhart*, 331 F.3d

1030, 1037 (9th Cir. 2003) (noting that "the use of a team approach by medical providers

[wa]s analytically significant" in *Shontos's* application of the treating source

regulations."). For social security benefits applications filed prior to March 27, 2017,

which was the case here, the term "acceptable medical sources" does not include PAs, but

was limited to "[l]icensed physicians (medical or osteopathic doctors)" in addition to a

few specialized categories. 20 C.F.R. § 404.1513(a) (2016). A PA is considered an

"other" medical source, i.e. not an acceptable medical source, for such benefits

applications. *See id.* § 404.1513(d) ("Medical sources not listed in paragraph (a) of this

section (for example, nurse-practitioners, **physicians' [sic] assistants**, naturopaths,

chiropractors, audiologists, and therapists)" (emphasis added)). Consequently, PA

Steckler is not considered a "treating source" and is not entitled the deference due a

treating source under the regulations.

    Plaintiff also argues:

> Similarly, the Agency generally accords more weight to the opinions of
> examining sources, see 20 C.F.R. § 416.927(c)(1)("Generally, we give more
> weight to the opinion of a source who has examined you than to the opinion

of a source who has not examined you."), a category that PA Steckler obviously fits, yet the record is devoid of any discussion of this preference.

(Dkt. No. 12 at 12.)

However, 20 C.F.R. § 416.927(c)(1) provides, "Generally, we give more weight to the **medical** opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." (Emphasis added.) As that regulation makes clear, only an "acceptable medical source"—which PA Steckler is not—can offer a "medical opinion." 20 C.F.R. § 416.927(a)(1) ("Medical opinions are statements from **acceptable medical sources** that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.") (emphasis added).

In sum, under the applicable regulations, PA Steckler's MSS is not entitled to the weight asserted by Plaintiff. PA Steckler falls into the category of "medical sources who are not acceptable medical sources" (i.e., "other medical sources") whose opinions "may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources." 20 C.F.R. § 404.1527(f)(1).

**B.     Effect of PA Steckler's "Other Medical Source" Status**

The opinions of an "other medical source" will be considered "using the same factors as listed in paragraph (c)(1) through (c)(6) [of 20 C.F.R. § 404.1527,]" where the relevant factors "depend[] on the particular facts in each case." 20 C.F.R. § 404.1527(f)(1). "Evidence provided by 'other sources' must be considered by the ALJ; however, the ALJ is permitted to discount such evidence if it is inconsistent with the

evidence in the record." *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015) (citing

*Lacroix v. Barnhart*, 465 F.3d 881, 886-87 (8th Cir. 2006); *Raney v. Barnhart*, 396 F.3d

1007, 1010 (8th Cir. 2005)). Opinions for other medical sources, such as from a PA,

"who are not technically deemed 'acceptable medical sources' under [social security]

rules, are important and should be evaluated on key issues such as impairment severity

and functional effects, along with the other relevant evidence in the file." SSR 06-03P,

2006 WL 2329939, at *3. The factors to consider when weighing such evidence include:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
- Any other factors that tend to support or refute the opinion.

*Id.* at *4-5. "The evaluation of an opinion from a medical source who is not an

'acceptable medical source' depends on the particular facts in each case. Each case must

be adjudicated on its own merits based on a consideration of the probative value of the

opinions and a weighing of all the evidence in that particular case." *Id.* at *5.

**C.     The ALJ Gave Proper Weight to PA Steckler's MSS**

Upon consideration of the relevant factors, the Court concludes that the ALJ gave

proper weight to the MSS filled out by PA Steckler. The primary problem with the MSS

is that most of the limitations relied on by Plaintiff were self-reported rather than based

on supporting evidence or otherwise explained by PA Steckler. PA Steckler noted each

instance in which the limitation described was reported by Plaintiff, rather than being her

assessment. No less than 20 times, PA Steckler wrote that a limitation was reported by Plaintiff, indicated by "vet reports" or "per veteran." (R. 549-53.) Eighth Circuit caselaw makes clear that these self-reported limitations are not owed additional weight simply because a medical provider recorded them. *See, e.g.*, *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017) ("[A]n ALJ need not give a treating physician's opinions controlling weight when the opinion is based on a claimant's subjective complaints that [the] ALJ does not find credible."); *McCoy v. Astrue*, 648 F.3d 605, 617 (8th Cir. 2011) ("Finally, the ALJ noted that Dr. Puente's evaluation appeared to be based, at least in part, on McCoy's self-reported symptoms and, thus, insofar as those reported symptoms were found to be less than credible, Dr. Puente's report was rendered less credible."); *Hawn v. Berryhill*, 2:16-CV-42, 2018 WL 4462256, at \*10 (E.D. Mo. Sept. 18, 2018) ("An ALJ may award less weight to a medical opinion when that opinion appears to be largely based on the plaintiff's subjective complaints.") (citing *Sears v. Berryhill*, No. 6:16-CV-3483-CV-RK, 2017 WL 63443804, at \*1 (W.D. Mo. Dec. 12, 2017))). Accordingly, the ALJ properly discounted the MSS and treated the reported limitations as Plaintiff's self-reported subjective complaints. (*See* R. 26 (noting that PA Steckler "acknowledged that most of her statements were based on [Plaintiff's] reported capabilities and limitations").). Indeed, PA Steckler noted above her signature on the MSS that she had been "[u]nable to perform functional capability testing." (R. 553.)

The ALJ also carefully assessed the medical record and found that it was inconsistent with the MSS. (R. 21-26.) "Subjective complaints may be discounted if the claimant's testimony is inconsistent with the evidence as a whole." *Nash v. Commr., Soc.*

*Sec. Administration*, 907 F.3d 1086, 1090 (8th Cir. 2018) (citing *Polaski v. Heckler*, 739

F.2d 1320, 1322 (8th Cir. 1984)). The ALJ determined that Plaintiff's "medically

determinable impairments could reasonably be expected to cause the alleged symptoms;

however, the claimant's statements concerning the intensity, persistence and limiting

effects of these symptoms are not entirely consistent with the medical evidence." (R. 21.)

Specifically, although Plaintiff has a documented history of a hip replacement, right leg

pain, fibromyalgia, and low back pain, the evidence supports that his symptoms are

inconsistent with the MSS. Regarding the hip replacement, the evidence shows that it

was successful. (R. 488 ("Left hip replacement, completed in 2004. The patient is

continuing to do well.").) Regarding the right leg pain, Plaintiff underwent right knee

surgery, which generally led to good results. (R. 301 ("Patient reports that his knee is

better since surgery and rates pain on average at 3/10.").) One of Plaintiff's providers,

Joseph Mohr, PA-C, stated that "as long as [Plaintiff] works out he has no pain" in his

knee and hip. (R. 604.) Records from Plaintiff's physical therapy in June 2015 after his

right knee surgery in 2015 note that Plaintiff was "able to transfer sit to stand from

standard height chair with equal weight bearing" as of June 3, 2015, and on June 5, 2015,

Plaintiff reported that "getting in/out of truck is without difficulty" and was described as

having "no difficulty with transfers or ambulation." (R. 300-01.)

Regarding his fibromyalgia, Plaintiff appeared in no acute distress at his

examinations, but did report increased pain with trigger point assessment. (R. 557.) At

his hearing, Plaintiff did not report continuous pain, but instead testified only that when

his provider "presses on certain points it hurts to beat heck." (R. 54.) Regarding

Plaintiff's complaints of back pain, there is limited evidence supporting his complaints. Plaintiff has reported his complaints of chronic back pain (e.g., R. 508, 511, 513, 558, 566), but there is nothing in the record beyond his subjective complaints, the degree of which is inconsistent with other evidence in the record, such as his activities of daily living. For example, there is evidence that Plaintiff "cuts wood often for home use and also sells cut wood." (R. 351.) Additionally, in 2016, Plaintiff was doing a 9-station workout modeled after a boxer's workout as part of his physical therapy. (R. 536.) In January 2016, Plaintiff was advised to increase his time on a treadmill from 15 minutes, three times a week to 30 minutes, three times a week, and was "agreeable" to that recommendation. (R. 404, 406.) The ALJ acknowledged these and other activities of daily living as supporting the RFC. (R. 25.)

Other reported limitations in the MSS are inconsistent with the evidence. For example, on the MSS, Plaintiff reported that he could walk a block and a half without rest. (R. 550.) This is inconsistent with his reported treadmill walking of 15-30 minutes in addition to the 9-station workout, which also took 30 minutes. (R. 536, 621.) Plaintiff reported that his knee pain is better with working out, so his provider encouraged him to continue. (R. 539.) In January 2016, Plaintiff was "advised to increase physical activity." (R. 406.)

As to Plaintiff's mental impairments, the ALJ's assessment is supported by substantial evidence. The ALJ acknowledged that Plaintiff had a positive depression screen (R. 602) and that Plaintiff reported his depression and anxiety had been worse since his wife died (R. 23-24). Plaintiff stated that his medications help with his

depression and anxiety, although he said that "they certainly don't take care of everything." (R. 57.) If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Hensley v. Colvin*, 829 F.3d 926, 933-34 (8th Cir. 2016) (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)). Moreover, aside from his depression screen, there is very little evidence in the record showing the effect of his depression and anxiety on his RFC. Plaintiff reported in the MSS that he was depressed and anxious, and that he "often gets to[o] overwhelmed to deal with anything." (R. 549-50.) As discussed above, these symptoms were self-reported. Further, even if PA Steckler opined that Plaintiff suffered from depression and anxiety or that Plaintiff was too overwhelmed to work, her specialty is rheumatology, not psychiatry or psychology, and courts "generally give greater weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." *Brown v. Astrue*, 611 F.3d 941, 953 (8th Cir. 2010) (quoting *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994)).

The Court acknowledges that PA Steckler stated that she has seen Plaintiff "usually a couple times a year, that varied" from August 4, 2004 through when Plaintiff filed his application for benefits. (R. 548.) The length of time that PA Steckler had seen Plaintiff and the frequency of visits entitles PA Steckler's opinion to some weight, but it cannot overcome the shortcomings addressed above.

Plaintiff also argues that, even if the ALJ had reasonable concerns with PA Steckler's opinion, "the ALJ had numerous options at her disposal, including re-contacting PA Steckler or even sending the entire file back to the State agency reviewer

for an updated opinion." (Dkt. No. 12 at 22 (citations omitted).) However, PA Steckler was actually very clear and forthright in the MSS about what was reported to her by Plaintiff and what was her assessment. She stated that the "form was filled out to the best of my ability. Veteran present during the process." (R. 553.) Having afforded PA Steckler's MSS little weight because her statements were based on Plaintiff's reports and the limitations were not supported by the objective evidence, the ALJ had no obligation to re-contact PA Steckler or send the file back for an updated opinion.

Further, the lack of examination evidence regarding Plaintiff's depression and anxiety, as well as other limitations, is partly the result of Plaintiff's failure to appear at the consulting examinations (R. 526-30). *See Aparicio v. Colvin*, CV 14-0595-PHX-MHB, 2015 WL 5461539, at *5 (D. Ariz. Sept. 18, 2015) (noting that the "Plaintiff failed to cooperate by failing to attend his consultative examinations and return disability development forms for the consulting physicians to fully assess Plaintiff's alleged limitations"). On initial review, the disability examiner determined that a consultative examination was required because "[t]he evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim." (R. 75.) However, Plaintiff missed two consulting examinations and did not respond to letters or phone calls from the disability examiner after he missed the examinations. (R. 75, 91.) Accordingly, the disability examiner ordered a second medical assessment review (R. 75). The medical consultant's RFC was similar to the RFC established by the ALJ, with a few minor differences. (R. 93-95.) Thus, the ALJ properly acknowledged the State agency consultant's medical assessment as supporting the RFC established for Plaintiff.

17

* * *

In sum, the ALJ properly weighed the MSS provided by PA Steckler, which was largely based on Plaintiff's self-reported symptoms. Further, the ALJ's determination of no disability and RFC were supported by substantial evidence, including the medical evidence of recommendations by Plaintiff's medical providers that Plaintiff increase his treadmill walking, that Plaintiff had been engaging in a 9-station workout, that Plaintiff was able to ambulate and transfer in June 2015, that Plaintiff's depression was controlled with medication, and that Plaintiff's surgeries were deemed successful by his providers (R. 57, 300-01, 536, 604, 621). This evidence and the other medical evidence support the ALJ's RFC determination. To the extent Plaintiff has cited some evidence in support of his contention that the RFC was incorrect, "substantial evidence to the contrary allowed the ALJ to make an informed decision." *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (affirming a finding of no disability despite a "little evidence here indicates that [Plaintiff] has Borderline Intellectual Functioning"). Plaintiff does not argue that even if the RFC that the ALJ determined is correct, Plaintiff is still entitled to a finding of disability. Accordingly, the Court finds no error in the ALJ's five-step analysis.

## IV.  ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Plaintiff Scott M.'s Motion for Summary Judgment (Dkt. No. 11) is **DENIED**;

2. Defendant Acting Commissioner of Social Security Nancy A. Berryhill's Cross Motion for Summary Judgment (Dkt. No. 15) is **GRANTED**; and

3. This case is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED: February 12, 2019           *s/Elizabeth Cowan Wright*
ELIZABETH COWAN WRIGHT
United States Magistrate Judge